UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ENO FARMS COOPERATIVE          :
ASSOCIATION, INC., ET Al.,      :
       Plaintiffs,            :
                        :
   v.                           :     Civ. No. 3:06cv1983(AHN)
                        :
CORPORATION FOR INDEPENDENT     :
LIVING, ET AL.,                 :
       Defendants.            :


RULING ON DEFENDANTS' MOTIONS TO DISMISS

This action concerns an affordable housing project in
Simsbury, Connecticut called Eno Farms Cooperative ("Eno Farms").
Eno Farms Cooperative Assoc., Inc. ("the Cooperative") and seven
residents of the Cooperative ("the Members") (collectively "the
plaintiffs") claim that the defendants defrauded them of their
ownership interests in the housing units and other financial
benefits.

The defendants include the following eighteen entities and
individuals that either owned, operated, financed, or regulated
Eno Farms: the Corporation for Independent Living ("CIL"), CIL
Housing of Simsbury, Inc. ("CIL-Simsbury"), CIL Housing Inc.
("CIL-Housing"), Martin M. Legault, and Stanley DeMello
(collectively the "CIL defendants"); Eno Farms Limited
Partnership ("the Partnership"); Connecticut Housing Finance
Authority ("CHFA"); National Equity Fund, Inc. and National
Equity Fund 1992, LP (collectively the "NEF defendants"); Local
Initiative Support Corporation ("LISC"); the Town of Simsbury and

the Town's council members, including Thomas E. Vincent, Joel
Mandell, John Romano, John K. Hampton, Moira Kunkell Weirthemier,
and David Rogers Ryan (collectively the "Town defendants"); and
Van Court Management Services, Ltd. ("Van Court").

Pending before the court are motions to dismiss filed by the
CIL defendants and the Partnership [doc. # 64], CHFA [doc. # 70],
the Town defendants [doc. # 74], the NEF defendants [doc. # 69],
and LISC [doc. # 72].  In the alternative, the Town defendants
move to bifurcate the trial as to the claims against them [doc.
# 77].  For the reasons given below, the court GRANTS the motions
to dismiss and, therefore, FINDS AS MOOT the Town defendants'
motion to bifurcate.

FACTS AND PROCEDURAL HISTORY

Taking all of plaintiffs' allegations as true and drawing
all reasonable inferences in their favor, the complaint alleges
the following facts:

I.    The Alleged Fraud

The plaintiffs allege that the CIL defendants, the NEF
defendants, and LISC created and operated Eno Farms as a
racketeering scheme.  According to the alleged scheme, these
defendants created Eno Farms with the help of the Town defendants
and CHFA and then deceived residents into paying for an ownership
interest in individual units when, in fact, the defendants owned

the units and could later sell them free of any restrictions after fifteen years.[1]

The defendants initiated the scheme in 1991, when the Town leased a parcel of land to CIL for ninety-nine years so CIL could develop Eno Farms.[2] CIL then created the Partnership, an entity comprised of CIL's subsidiaries, CIL-Housing and CIL-Simsbury, and assigned the lease from CIL to the Partnership. Between 1992 and 1993, the CIL defendants obtained some financing to develop the housing project through CHFA, a state-affiliated organization responsible for creating affordable housing opportunities within Connecticut. NEF and LISC also generated funding by selling tax credits to outside investors through an IRS-sponsored low-income housing program under 26 U.S.C. § 42. In order for the investors to receive the tax credits, § 42 mandated a fifteen-year "compliance period," during which the defendants were required to verify that the income levels of the Eno Farms residents met

_____

[1] Although not entirely clear from the first amended complaint, the plaintiffs seem to allege that they were promised individual ownership in their units, while the Cooperative would eventually "own the housing units." (First Am. Compl. ¶ 32.) Nevertheless, the plaintiffs claim damages based on individual ownership, such as loss of equity and property appreciation.

[2] In 1882, the Town received the 140-acre parcel from Amos Eno, who required that it be "used for the occupation, maintenance and support of the Town poor and for no other purpose." (First Am. Compl. ¶ 1.)

particular requirements.[3]  The fifteen-year compliance period
ends in 2008.

Once the CIL defendants, the Partnership, the NEF
defendants, and LISC obtained financing for Eno Farms, the
Partnership created the Cooperative through the Declaration of
Eno Farms Cooperative Assoc. ("the Declaration"), and subleased
the land to the Cooperative for ninety-nine years.  The
Partnership, however, only subleased the housing units and other
improvements on the land for fifteen years.  This arrangement,
according to the plaintiffs, allowed the defendants to retain
ownership of the housing units when the compliance period ended
in 2008.

Around the same time, the CIL defendants, the Partnership,
and the NEF defendants agreed, through the "Purchase Option and
Right of First Refusal Agreement" (the "Option Agreement"), to
grant CIL-Housing the right to purchase the housing units from
the Partnership, at the end of the compliance period.  Given
certain conditions, the Option Agreement also gave CIL-Housing
the right to sell the units "free and clear of the low-income use
restrictions contained in the [Town's lease]."  (First Am. Compl.
¶ 34.)  The Option Agreement also provided that CIL-Housing can
assign all of its rights in the housing units to the Cooperative.

---

[3]  The plaintiffs allege that they were entitled to receive
these tax credits.

With Eno Farms formed and financed, the CIL defendants constructed the housing units and induced the Members, as well as other residents, to occupy all the units by 1995.  In marketing Eno Farms, the CIL defendants' falsely promised that residents would have an "equity ownership interest" in the units, referred to the prospective residents as "owners," mischaracterized rent payments as "carrying charges," and stated that "rent/carrying charges" would not exceed thirty percent of their income, indicating that these payments were based on a sliding scale. (Id. ¶¶ 44-45.)

Upon occupying their units, the residents of Eno Farms – and presumably the Members – paid an association fee to join the Cooperative and signed the "Proprietary Lease Eno Farms Cooperative" ("Proprietary Lease").  The residents "were required to sign a Sweat Equity Agreement [that] required the [Members] to perform unspecified work on the unit[s] to build equity in the unit[s]."  (Id. ¶ 46.)

The plaintiffs allege that this scheme to deceive the residents as to their supposed ownership interest in their units was fraudulently concealed by Attorney Helga Woods ("Attorney Woods"), who simultaneously represented the Cooperative and the CIL defendants during the drafting of the Declaration, subleases, and other documents structuring Eno Farms.  While she continued to represent the Cooperative until 2003, she never disclosed the

fact that the plaintiffs did not have any ownership interest in the units.

The plaintiffs claim that they did not know of the fraud until December 11, 2003, when they met with the CIL defendants and Attorney Woods.  At this meeting, Attorney Woods allegedly "gave a deceitful/misleading consultative or evaluative opinion violating [Rule of Professional Conduct] 2.2 or Rule 2.3 by failing to disclose to [the] COOPERATIVE the LISC/NEF[] Scheme in furtherance of the Scheme."  (Pls.' V.S. of Case, Table of Predicate Acts, 5.)  Following this meeting, the plaintiffs claim they first "began to realize that there were problems with the way the [Cooperative] was created and marketed."  (Pls. Opp. to Mot. to Dismiss 26).

## II.  Alleged Retaliation

The Cooperative alleges it complained to various governmental agencies about the conduct of some defendants.  In particular, in March 2004, the Cooperative complained to an unnamed person that the CIL defendants and the Partnership filed false income tax records between 2001 to 2003 on behalf of the Cooperative.  In May 2004, the Cooperative complained to Attorney Woods that the CIL defendants, the Partnership, the NEF defendants, and LISC were engaged in money laundering.  In June 2004, the Cooperative made the same allegations to the U.S. Attorney's Office and Webster Bank, where the Partnership keeps

an account.  Around this time, the Cooperative also complained to the IRS that Attorney Woods, the CIL defendants, the Partnership, the NEF defendants, and LISC had violated federal tax laws.

The plaintiffs allege that after making these complaints, the Town defendants retaliated against them by denying their petitions for a special tax district.  Specifically, in November 2003, residents of Eno Farms submitted a petition for a special tax district with boundaries coterminous with Eno Farms.  The Town denied the petition to schedule a hearing, which the plaintiffs claim violated state law.

In December 2004, residents of Eno Farms submitted a second petition for a special tax district.  After requesting more information, the Town denied the residents' request for a hearing on the second petition.

Residents of Eno Farms signed a third petition in 2004, and the Town again rejected it.  After the Town failed to call a meeting on the third petition, the Town's attorney allegedly sued fifteen to twenty residents who signed the third petition for a declaratory judgment to determine the residents' right to a special tax district.  This suit remains pending in state court. According to the first amended complaint, residents have circulated a fourth petition.

The first amended complaint fails to allege whether any of the residents who signed the petitions are also plaintiffs in

this case.

III. <u>Procedural History</u>

The plaintiffs filed their complaint on December 11, 2006 and amended it on February 5, 2007.  The complaint alleges civil RICO claims, as well as violations of federal constitutional rights and state law.  At oral argument, the court granted the plaintiffs's motion to withdraw certain claims from the first amended complaint.

Thus, plaintiffs now bring the following claims:  (1) a violation of the Racketeering Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1962(b), (c), & (d), against the Partnership, the CIL defendants, the NEF defendants, and LISC; (2) a violation of the Fourteenth Amendment right to due process against CHFA; (3) First Amendment retaliation against the Town defendants; (4) fraud against the Partnership, the CIL defendants, the NEF defendants, LISC, CHFA, and Van Court; (5) conversion against the Partnership, the CIL defendants, and the Town defendants; and (6) reformation against the Partnership, the CIL defendants, and the Town itself.

The defendants move to dismiss all claims.  Further, the Town defendants move, in the alternative, to bifurcate the case as to the claims against them.

<u>STANDARD</u>

The defendants move to dismiss the plaintiffs' claims under

-8-

Fed. R. Civ. P. 12(b)(6).  In deciding such a motion, the court must take all factual allegations in the complaint and its exhibits as true, and construe all reasonable inferences in the plaintiffs' favor.  Sharp Int'l Corp. v. State St. Bank & Trust Co., 403 F.3d 43, 49 (2d Cir. 2005).  The appropriate inquiry is not whether the plaintiffs are likely to prevail, but whether they are entitled to offer evidence to support their claims. Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).  Nevertheless, Rule 12(b)(6) "obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render a claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (citing Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955 (2007)). In addition, Fed. R. Civ. P. 9(b) requires that averments of fraud, including RICO claims, be made with particularity.  First Capital Asset Mgmt., Inc. v. Brickelbush, Inc., 150 F. Supp. 2d 624, 631 (S.D.N.Y. 2001).  In ruling on a motion to dismiss, the court may not consider matters outside the complaint, but may consider documents attached to the complaint, referenced in the complaint, or integral to the complaint.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

## DISCUSSION

The defendants primarily argue that nearly all of the claims should be dismissed on statute of limitations grounds.  In

addition, the Town defendants argue that the First Amendment retaliation claim should be dismissed because the complaint fails to allege facts necessary to support that claim. The court addresses the validity of each of these claims in turn.

I.  Civil RICO Claims

The CIL defendants, the Partnership, the NEF defendants, and LISC move to dismiss the civil RICO claim on the ground that the four-year statute of limitations has expired. A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion "[w]here the dates in a complaint show that an action is barred by a statute of limitations . . . ." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989); see McCarty v. Derivium Capital, LLC, No. Civ. 303CV651MRK, 2006 WL 413258, at *2 (D. Conn. Feb. 21, 2006). Civil RICO claims are subject to a four-year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assoc., 483 U.S. 143, 156 (1987); Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1102 (2d Cir. 1988). A "cause of action to recover damages based on that [RICO] injury accrues to plaintiff at the time he discovered or should have discovered the injury." Bankers Trust Co., 859 F.2d at 1102. The plaintiffs filed this action on December 12, 2006. Therefore, their RICO claim is time-barred if they were on inquiry notice of their injury more than four years before that date, i.e., on or after December 12, 2002.

A.    Inquiry Notice of the Injury

The plaintiffs allege that the defendants deprived them of tax credits, ownership in the housing units, and carrying charges.  They allege that they could not have learned of the fraud because the documents creating Eno Farms were too complex for them or their attorneys to understand.  Without elaboration, they claim to have learned of the fraud in December 2003, after a meeting with some of the defendants and Attorney Woods.  The court, however, finds that the plaintiffs were on inquiry notice by 2000, and therefore, that their RICO claim does not fall within the statute of limitations.

"The question of constructive knowledge and inquiry notice may be one for the trier of fact and therefore ill-suited for determination on a motion to dismiss . . . . Nonetheless, the test is an objective one and dismissal is appropriate when the facts from which knowledge may be imputed are clear from the pleadings . . . ." Salinger v. Projectavision, Inc., 934 F. Supp. 1402, 1408 (S.D.N.Y. 1996) (citations omitted); see In re Merrill Lynch Ltd. P'ship Litig., 154 F.3d 56, 60 (2d Cir. 1998) ("We have held that the question of inquiry notice need not be left to a finder of fact.").  "As one district court wrote in the context of RICO claims, the question is 'whether the plaintiffs received information sufficient to alert a reasonable person to the probability that they had been misled, that is whether the

plaintiffs were on inquiry notice; and . . . whether the
plaintiffs responded to such notice with reasonable diligence.'"
In re Nine West Shoes Antitrust Litigation, 80 F. Supp. 2d 181,
193 (S.D.N.Y. 2000) (quoting Butala v. Agashiwala, No. 95 Civ.
936(JGK), 1997 WL 79845, at *4 (S.D.N.Y. Feb. 24, 1997)).

Here, the allegations in the complaint and the documents
integral to the complaint indicate that, by 2000, reasonable
persons would have been alerted to the probability that they did
not receive an ownership interest in the units or any financial
benefits flowing therefrom.  The 1993 Declaration stated that the
Town, not the Partnership or the Cooperative, owned the land on
which Eno Farms was built and that residents did not have an
individual ownership interest in the units.  In particular, this
document describes how the CIL defendants structured Eno Farms,
including leasing the land from the Town and subleasing the units
to the Cooperative during the compliance period:

> The real property constituting [Eno Farms]
> includes a leasehold interest in and to the
> land, and ownership of the Improvements and
> the Units created by the [Partnership]
> pursuant to the Ground Lease.  The Period of
> [Partnership] Ownership is a minimum of
> fifteen (15) years during which the
> [Partnership] will continue to own the Units
> and Improvements, subject to the Lease of the
> Improvements.    During    the    Period   of
> [Partnership] Ownership, [Eno Farms] shall
> remain in compliance with the Tax Credit
> Requirements of Section 42 of the Internal
> Revenue Code and the regulations promulgated
> pursuant thereto.

(Declaration § 2.20a, Ex. A to CHFA's Reply to Pls.' Opp'n to Mot. Summ. J.)[4]  The Declaration further explains that the Members only have an equity interest in the Cooperative, as opposed to their individual units, voting rights on Cooperative matters, and liability for common expenses.

The plaintiffs do not claim that the defendants concealed the Declaration or that it was otherwise unavailable.[5]  While they do claim that the defendants made the Declaration and other documents too complex for them to understand, they also admit that the plaintiffs were represented by "their attorneys." (First Am. Compl. ¶ 7.)  The Declaration, although difficult for a non-attorney to understand, would certainly alert a "reasonable [attorney] to the probability that [the plaintiffs] had been misled."  In re Nine West Shoes Antitrust Litigation, 80 F. Supp. 2d at 193.

---

[4]  Although the Declaration is extrinsic to the complaint, the court considers the document because it is cited in the complaint and the plaintiffs rely on it in bringing their claims. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("On a motion to dismiss, a court may consider documents . . . of which the plaintiffs had knowledge and relied on in bringing suit").

[5]  The first amended complaint indicates that the Declaration was publicly available.  First, it states that under Conn. Gen. Stat. § 47-220, the "declaration [forming a common interest community, such as the Cooperative] shall be recorded in every town in which any portion of the common interest community is located and shall be indexed . . . ."  (First Am. Compl. ¶ 14.)  Second, it states that the defendants "filed" the Declaration in December 1993.  (Id. ¶ 32.)

Moreover, aside from the Declaration itself, the course of business at Eno Farms would have alerted reasonable persons to the fraud beginning in 1995.  Members never took out mortgages on their units, and there were no closings and no deeds.  Instead, they paid monthly "rent/carrying charges" to the Cooperative, and each year, the Cooperative required the Members to recertify their incomes to demonstrate that they qualified for residency at Eno Farms.  Further, the Proprietary Lease,[6] which the Members signed when they moved into the units in 1995,[7] limited the Members' right to the property by providing for eviction procedures, requiring yearly income recertification, and restricting improvements to the units.[8]  In addition, the

---

[6]  The court refers to the Proprietary Lease, which is attached to the CIL defendants' reply memorandum, because it is mentioned in the first amended complaint and is integral to the claims alleged therein.  See Chambers, 282 F.3d at 153.  Although plaintiffs' counsel stated at oral argument that the form of the Proprietary Lease has changed between 1995 and now, counsel admitted that it was substantially similar to the one attached to the CIL defendants' reply memorandum.

[7]  The first amended complaint does not indicate when the Members joined the Cooperative, occupied their units, or signed their leases.  The complaint, however, does say that the units were occupied by 1995 and that the Members received the Proprietary Leases when they occupied the units.  (See First Am. Compl. ¶ 45-47.)  Therefore, absent more particular allegations in the first amended complaint, the court infers that the Members occupied their units and received the Proprietary Leases by 1995.

[8]  Specifically, the Proprietary Lease described the limitations on the Members' use of the housing units, including that the Members were prohibited from subletting the units without consent of the Cooperative; the Members could not transfer their right to occupy the units; the Members paid

plaintiffs do not allege that they ever received any tax credits, and therefore, they knew since the project's inception in 1995 that any promises related to their entitlement to tax credits were false.

Further, by 1997, other residents of Eno Farms knew that they did not have an ownership interest in the units because they sued the CIL defendants and the Town, making similar allegations to those the plaintiffs now make. <u>See</u> <u>Mele v. Town of Simsbury</u>,

monthly "CEC charges" to the Cooperative; the Members had to certify that their income fell below certain thresholds to qualify for the right to occupy the unit; the Cooperative could "evict[]" the Members from the units; the lease term was one year, but the term would automatically renew for another year, under certain conditions; the Cooperative would pay for "repairs, maintenance and replacements" to the unit, except under certain conditions; the Members could not prevent reasonable inspections of the units by the Cooperative "or [the] management agent or the Eligible Mortgagees;" the Members could not make certain improvements to the units without consent of the Cooperative; the Declaration determined the partial refund of the association fee that the Members would receive "when [they] eventually le[ft] Eno Farms;" and Members rights under the Lease were "secondary (subordinate) to any mortgages now on the Property or which may be put on the Property in the future" and that "[a]ny such mortgages are a superior and prior lien to Your Proprietary Lease upon recording regardless of the dates of the recording." (Proprietary Lease, Ex. A to CIL Def.'s Mot. to Dismiss.)

No. CVH 5949, 1998 WL 246629, at *1 (May 14, 1998).[9]  For

example, the complaint stated that "[t]he defendants failed to

convey any form of home[]ownership, partial, present or future to

the occupants" and "under the sweat equity requirement . . . were

required to finish the units and alleviate substandard

construction for free."  The Mele complaint also described most

of the elements of the scheme alleged here, i.e., that the Town

retains title to the land on which Eno Farms was built, that the

CIL defendants retain title to the housing units, and that

residents were required to sign sweat equity agreements.

Other circumstances provided inquiry notice of the fraud in

1999.  In that year, the Connecticut Department of Consumer

Protection and the Office of the Attorney General investigated

the CIL defendants, who entered into an "Assurance of Voluntary

---

[9]  Although the allegations in the Mele litigation are
extrinsic to the complaint, the court, on a 12(b)(6) motion, can
consider the fact that these allegations were made because
judicial notice may be taken of court filings and rulings.  Roth
v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  "A court may take
judicial notice of a document filed in another court not for the
truth of the matters asserted in the other litigation, but rather
to establish the fact of such litigation and related filings."
Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A.,
Inc., 146 F.3d 66, 70 (2d Cir. 1998); see, e.g., S. Strauss, Inc.
v. United Food & Commercial Workers Union, Local 342, No.
07-CV-2432 (JFB)(ETB), 2007 WL 2343664, at *8 (E.D.N.Y. Aug. 13,
2007) (taking judicial notice of the parties' filings and the
court's order in another action in ruling on 12(b)(6) motion);
see also Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir.
1991) (rejecting argument that the district court improperly
considered state litigation as "quibbles [that] give us little
pause").

Compliance," agreeing not use the terms "unit ownership" or "down payment" in connection with its efforts to market Eno Farms. A January 1999 editorial also appeared in the Hartford Courant, declaring "that people who live in limited-equity cooperatives, such as Eno Farms . . . , were deceived by . . . (CIL) into believing that they were homeowners rather than renters." (Pls.' V.S. of Case, Table of Predicate Acts, 2.)

Finally, the CIL defendants made plaintiffs aware of the Option Agreement in 2000 when they stated that "CIL will assign its rights under the Option to Purchase-Right of First Refusal from the Partnership to the Cooperative."[10] (First Am. Compl. ¶ 54.) A January 2002 communication from the CIL defendants to the Cooperative, regarding the "Settlement of Lawsuit by Former & Current Residents, Future Conveyance of Property to Cooperative Association," reiterated: "It was always CIL's intention to convey the property to the Eno Farms Cooperative association after the 15[-]year tax period . . . ." (Id. ¶ 56.)

Therefore, these circumstances indicate that by 2000 the plaintiffs were on inquiry – if not actual – notice that they did not have an ownership interest in the housing units and that CIL-Housing had the right to purchase the units at the end of the compliance period.

---

[10] The first amended complaint fails to elaborate on the context of this communication.

B.  Fraudulent Concealment

The plaintiffs, however, argue that they are entitled to equitable tolling of the statute of limitations until December 2003 because Attorney Woods, the CIL defendants' agent, fraudulently concealed their injuries from the fraud between 1995 and December 2003.  Attorney Woods's conduct, they argue, excuses inquiry notice and justifies the delay in bringing this action.

To demonstrate fraudulent concealment justifying equitable tolling, the plaintiffs "must establish three elements including: (1) wrongful concealment by defendants (2) which prevented plaintiff[s'] discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim."  Nat'l Grp. for Commc'n & Computers Ltd. v. Lucent Tech. Inc., 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006) (citing Merrill Lynch, 154 F.3d at 60).  The plaintiffs must plead each of these elements with particularity as required by Rule 9(b).  See Butala v. Agashiwala, 916 F. Supp. 314, 319 (S.D.N.Y. 1996) (citing cases).  "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff[s]."  Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000). Fed. R. Civ. P. 9(b) requires that plaintiffs state their allegations of fraud "with particularity."  In order to meet this burden, the complaint must, "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3)

state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

The plaintiffs allegation of fraudulent concealment fails to justify equitable tolling.  While Attorney Woods's representation of the Cooperative during its formation may have initially prevented the plaintiffs from learning of the fraud, the Declaration, the Proprietary Leases, the course of business at Eno Farms, the Mele litigation, the state investigation, the newspaper opinion, and the CIL defendants' statements provided independent notice between 1993 and 2003 that the plaintiffs lacked an ownership interest in Eno Farms.  Although the plaintiffs state that Attorney Woods represented the Cooperative between 1993 and 2003, they do not describe any misrepresentations she made to them during that period; nor do they allege with any particularity what transpired at the December 2003 meeting that allowed them to discover the fraud at that time.  Under these circumstances, Attorney Woods's representation of the Cooperative could not have "prevented plaintiff[s'] discovery of the nature of the claim within the limitations period."

In addition, while the first amended complaint alleges that Attorney Woods represented the Cooperative until 2003, it does

not indicate that she also represented the Members.  Therefore,
absent more specific allegations required by Rule 9(b), the
complaint lacks any basis for inferring that the Members relied
on Attorney Woods's representations, whatever they may have been.

Finally, fraudulent concealment is not warranted because the
plaintiffs do not allege that they exercised any "due diligence
in pursuing the discovery of the claim[s]."  Nat'l Grp. for
Commc'n & Computers Ltd., 420 F. Supp. 2d at 265.  Despite the
numerous indications that they did not have an ownership interest
in the units, the plaintiffs fail to describe the steps they took
to discover these claims between 1993 and the December 2003
meeting.[11]  See Merrill Lynch, 154 F.3d at 60 (affirming
dismissal of plaintiffs claims because investors made "no
allegation of any specific inquiries of Merrill Lynch, let alone
detail when such inquiries were made, to whom, regarding what,
and with what response").

Therefore, the court finds no basis for equitably tolling

---

[11]  Given that the plaintiffs fail to describe any efforts
they undertook to discover the fraud, the court rejects the
plaintiffs' claim that they could not discover the fraud because
the "documents creating [Eno Farms] were made intentionally
complex and complicated to be well beyond the understanding of
most prospective residents or their attorneys regarding the
ownership interest a prospective resident was to receive."
(First Am. Compl. ¶ 7.)

the limitations period.[12]

C.    "New and Independent Injuries"

In the alternative, the plaintiffs argue that the continued operation of the racketeering scheme created "new and independent" injuries for which the statute of limitations has not yet expired.  Specifically, the plaintiffs' claim that the "Table of Predicate Acts included in the complaint outlines the numerous and continuous separate and distinct acts of the CIL defendants and the NEF defendants, which are 'new and independent' injuries within the meaning of the Second Circuit's rule of separate accrual."  The court, however, finds that the predicate acts do not constitute new and independent injuries.

Under the separate accrual rule, a new civil RICO claim accrues – and the four-year limitations period begins anew – each time a plaintiff discovers or should have discovered a new and independent injury.  See In re Merrill Lynch, 154 F.3d at 59. The Second Circuit, however, has made clear that allegations of "new and independent" injuries cannot depend on injuries that are derivative of the core injury sustained.  For example, in Merrill Lynch, investors in a real estate limited partnership complained that "Merrill Lynch's limited partnership scheme was fraudulent

_____

[12]    At oral argument, the court inquired of the plaintiffs about what occurred at the December 2003 meeting to suddenly make them aware of the fraud, but plaintiffs' counsel failed to explain in any detail what Attorney Woods or the defendants said at the meeting.

at the outset [because] Merrill Lynch knew that the investments could not make the 'guaranteed' gains, and planned to collect significant fees during the course of the partnership life."  Id. While the investors argued that "later communications which put a gloss on the losing investments were" actually "new and independent injuries," the Second Circuit found that these communications were "continuing efforts to conceal the initial fraud, and not separate and distinct fraudulent acts resulting in new and independent injuries."  The Second Circuit also found that because "collection of annual fees occurred in each year of the life of the partnerships . . . [, c]ollection in later years [could not] be viewed as a separate and distinct fraud creating new injuries as it was simply a part of the alleged scheme." Id.; cf. Bingham v. Zolt, 66 F.3d 553, 562 (2d Cir. 1995) (holding that a "variety of schemes which were related only in their ultimate goal" were "new injuries").

The first amended complaint alleges Eno Farms was fraudulent from its inception.  The defendants allegedly created the project for the purpose of defrauding the plaintiffs with false promises of home ownership.  Any subsequent injuries – the loss of carrying charges, tax credits, and unit appreciation – follow from the execution of that scheme between 1993 and 1995, when residents occupied Eno Farms.  The predicate acts that occurred after Eno Farms was occupied – including communications regarding

names on a bank account, a tax return, the meeting with Attorney
Woods – were not new and independent injuries.  These later
statements merely concerned the maintenance of Eno Farms and the
power struggles between the Cooperative and the CIL defendants,
and thus, were nothing more than continuing efforts by the
defendants to conceal the fraudulent scheme by maintaining the
plaintiffs' belief that they had an ownership interest in Eno
Farms.  While the defendants collected rents on a monthly basis,
these actions are no different than the collection of annual fees
that <u>Merrill Lynch</u> found did not trigger the separate accrual
rule.[13]

Thus, based on the allegations in the first amended
complaint, the court finds that the plaintiffs' civil RICO claims
are time-barred.

---

[13]  To the extent the plaintiffs' claim is based on any
injuries flowing from the CIL's decision to purchase the housing
units and sell them free of the low-income restrictions at the
end of the fifteen-year compliance period in 2008, the claim must
be dismissed as not ripe.  At this time, it is unclear whether
the CIL defendants will assign their option to the Cooperative in
2008, and therefore, the plaintiffs' injuries – and any damages
flowing therefrom – are speculative at this juncture.  <u>See</u> <u>Cruden</u>
<u>v. Bank of New York</u>, 957 F.2d 961, 977-98 (2d Cir. 1992) (holding
that a claim seeking compensation for the fraudulent sale of
debentures was timely, even though the alleged fraud occurred
more than four years prior to the suit, because the claim did not
accrue until the fraudulent debentures went into default).

II.  Fourteenth Amendment Claims

The plaintiffs also bring claims pursuant to 42 U.S.C. § 1983 against CHFA for violations of their Fourteenth Amendment right to procedural due process to a property interest in Eno Farms.  CHFA moves to dismiss the plaintiffs' claims on the ground that the claims are barred by the three-year statute of limitations.  The court agrees.

The statute of limitations for § 1983 claims is based on the state-law statute of limitations for tort claims, which in this case is three years.  Conn. Gen. Stat. § 52-577; see Walker v. Jastremski, 430 F.3d 560, 562 (2d Cir. 2005) (finding that the statute of limitations of § 1983 is three years).  However, federal law, rather than state law, dictates when a § 1983 claim accrues.  Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997).  Under federal law, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  Id. (citation and quotation omitted).

As discussed in detail above, the plaintiffs knew, or had reason to know, of the alleged deprivation of their property interest before December 2003, which is the latest time the claims would be within the three-year limitations period. Therefore, the court finds these claims time-barred.

III. First Amendment Retaliation Claim

The plaintiffs' First Amendment retaliation claims against

-24-

the Town defendants allege that after the Cooperative complained to government agencies about alleged illegalities by the CIL defendants, the Partnership, the NEF defendants, LISC, and Attorney Woods, the Town defendants retaliated against the plaintiffs by dismissing their petitions for a special tax district for Eno Farms. The Town defendants move to dismiss this claim because the plaintiffs fail to allege any causal connection between the Cooperative's speech and the Town defendants' actions. The court agrees that these claims should be dismissed.

"[T]o sustain a First Amendment retaliation claim, a [plaintiff] must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotations and citations omitted).

Assuming the allegations meet the first and second elements of this claim, they fail to establish the third element, that is, a causal connection between the protected speech and the adverse action. "In order to satisfy the causation requirement, allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" Davis v. Goord, 320 F.3d 346, 354 (2d Cir. 2003) (citing Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other

grounds by <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002)).
The first amended complaint alleges two parallel series of events
– the Cooperative's complaints about illegal conduct by the CIL
defendants, the Partnership, the NEF defendants, LISC, and
Attorney Woods, on the one hand, and the Town defendants' denial
of residents' petitions, on the other.  Thus, the plaintiffs do
not allege they complained about improprieties by the Town
defendants.  The complaint, however, does not allege any facts
connecting these separate series of events.  The plaintiffs make
no allegation that the Town defendants knew about the
Cooperative's complaints to the U.S. Attorney's Office, the IRS,
or the Bank regarding the other defendants.  They also do not
allege that any of the CIL defendants, the Partnership, the NEF
defendants, LISC, or Attorney Woods ever informed the Town
defendants of the complaints.  Moreover, the allegations provide
no basis for inferring that the Town defendants would retaliate
against the defendants for speech about other persons and
entities.  Indeed, the plaintiffs do not claim that the Town
defendants were part of the RICO enterprise or coordinated with
the defendants in any other manner, except to lease the land to
the CIL defendants in 1993.  Further, according to the
plaintiffs' allegations, the Town defendants denied the first
petition in 2003, months before the Cooperative ever complained
about the other defendants.  Thus, the allegations do not support

the inference that the speech played any part – much less a "substantial part" – in the denial of the petitions for the special tax district.  See Davis, 320 F.3d at 354.

Moreover, because the causal link supporting this claim is not self-evident, the plaintiffs have an obligation to amplify the claim with factual allegations rendering it plausible. Twombly, 127 S.Ct. at 1955.  Even in opposition to the Town defendants' argument, the plaintiffs make no effort to clarify the causal link between their speech and the adverse action. Instead, they quote a block of the text from the first amended complaint, which failed to clarify their allegations in the first instance.  Cf. D. Conn. L. Civ. R. 7(a) (requiring parties opposing motions to respond).

For these reasons, the first amended complaint fails to state a claim of First Amendment retaliation.  Accordingly, the claim is dismissed.

IV.  State-Law Claims

The plaintiffs also bring claims for reformation, fraud, and conversion against some of the defendants.  Under 28 U.S .C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's

right." United Mine Workers v. Gibbs, 38 U.S. 715, 726 (1966).

Because the plaintiffs claim this action rests on federal

question jurisdiction and because the court has dismissed all of

the plaintiffs' federal claims, the court declines to exercise

supplemental jurisdiction over the plaintiffs' state-law claim of

reformation, fraud, and conversion.[14] See, e.g., Smallwood ex

rel. Hills v. Lupoli, No. 04-CV-0686 (JFB)(MDG), 2007 WL 2713841,

at *11 (E.D.N.Y. Sept. 14, 2007) (declining to exercise

supplemental jurisdiction over state-law claims where the court

dismissed a civil RICO claim and no other basis for federal

jurisdiction existed).[15]

---

[14] Van Court did not file a motion to dismiss, join the other defendants' motions to dismiss, or appear at oral argument on those motions. Nevertheless, because the only claim against Van Court is based on state law and the court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims, the first amended complaint is dismissed against Van Court as well.

[15] At the end of oral argument on the defendants' motions to dismiss, the plaintiffs orally moved for leave to file a second amended complaint but did not provide the court with a copy of the proposed second amended complaint or explain how an amendment would cure the defects argued by the defendants, in particular the statute of limitations problems. Even in their opposition papers, the plaintiffs have never hinted at any facts that would cure the deficiencies found by the court herein. Under these circumstances, the court denied the motion during oral argument. See, e.g., Porat v. Lincoln Towers Community Ass'n, 464 F.3d 274, 276 (2d Cir. 2006) (refusing to remand for repleading where "plaintiff's counsel did not advise the district court how the complaint's defects would be cured" by an amendment to the complaint); see also Twohy v. First Nat'l Bank of Chicago, 758 F.2d 1185, 1197 (7th Cir. 1985) (observing that "normal procedure is for the proposed amendment or new pleading to be submitted" with the motion for leave to amend, and that failure

## CONCLUSION

For the foregoing reasons, the court GRANTS the motions to dismiss by the CIL defendants and the Partnership [doc. # 64], CHFA [doc. # 70], the Town defendants [doc. # 74], the NEF defendants [doc. # 69], and LISC [doc. # 72].  In light of these rulings, the court FINDS AS MOOT the Town defendants' motion to bifurcate [Doc. # 77].  For the reasons stated above, the plaintiffs' first amended complaint [doc. # 40] is dismissed with prejudice.  The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED this 13th day of November, 2007 at Bridgeport, Connecticut.

                            _____/s/_____
                            Alan H. Nevas
                            United States District Judge

_____

to do so "indicates a lack of diligence and good faith").  If the plaintiffs can allege facts that would cure the problems described in this opinion, they can timely file a motion for reconsideration and attach a proposed amended complaint.